

30

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**          **Case No. 12-20224**

          Plaintiff,          **SENIOR U.S. DISTRICT JUDGE**
                                **ARTHUR J. TARNOW**

v

**ROBERT DAVIS,**

          Defendant.

FILED 2016 AUG -9 PM

U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

_____

## DEFENDANT ROBERT DAVIS' EMERGENCY MOTION FOR ENTRY OF ORDER APPROVING MONTHLY RESTITUTION PAYMENTS AS RECOMMENDED BY U.S. PROBATION OFFICE PURSUANT TO MVRA AND ENTRY OF AN ORDER DECLARING THE HIGHLAND PARK SCHOOL DISTRICT AND ITS EMERGENCY MANAGER DO NOT HAVE STANDING TO ENFORCE THE COURT'S DECEMBER 29, 2014 RESTITUTION ORDER

**NOW COMES** Defendant Robert Davis ("**Defendant**" or "**Defendant**

**Davis**"), in his own proper person[1], and for his Emergency Motion for Entry of

Order Approving Monthly Restitution Payments As Recommended By U.S.

Probation Office Pursuant to MVRA and Entry of An Order Declaring The

Highland Park School District and Its Emergency Manager Do Not Have Standing

To Enforce The Court's December 29, 2014 Restitution Order ("**Emergency**

**Motion**"), states the following:

---

[1] Defendant Robert Davis may seek the appointment of counsel in accordance with the Criminal Justice Act, 18 U.S.C. 3006A ("**CJA**") to represent him in these proceedings.

## I.     INTRODUCTION

In an apparent attempt to retaliate against Defendant Davis for exercising his First Amendment Constitutional Rights, on Friday, August 5, 2016, counsel for the Highland Park School District's Emergency Manager, Steven Schiller ("**Emergency Manager**"), filed a motion in the Wayne County Circuit Court that essentially seeks to enforce this Court's December 29, 2014 Restitution Order (Docket No. 75). Specifically, the Highland Park School District's Emergency Manager's motion seeks the entry of an order requiring Defendant Davis to pay over assets to the Highland Park School District and its Emergency Manager to satisfy this Court's December 29, 2014 Restitution Order (Docket No. 75) and be ordered to participate in a creditor's exam. (**See Highland Park School District's Emergency Manager's Motion attached hereto as Exhibit A**). The Emergency Manager's and Highland Park School District's motion is scheduled to be heard on Friday, August 19, 2016 at 9 a.m. before Wayne County Circuit Court Judge Kathleen MacDonald.[2] (**See Notice of Hearing for Highland Park School District's State-Court Motion attached hereto as Exhibit B**).

---

[2] Wayne County Circuit Judge Kathleen MacDonald ("Judge MacDonald") has previously stated publicly that she has a personal dislike for Defendant Davis and in fact, U.S. Bankruptcy Judge Walter Shapero had to vacate and void an order previously entered by Judge MacDonald against Defendant Davis because it was purposely entered in violation of the Bankruptcy Court's Automatic Stay. *See* Defendant Davis' Chapter 7 Bankruptcy Case No. 14-57324-wsd, Docket No. 104.

Because Judge MacDonald has a history of purposely entering orders against Defendant Davis in violation of federal law, if immediate action is not taken by this Honorable Court, Defendant Davis is fearful that Judge MacDonald will grant the Emergency Manager and the Highland Park School District the requested relief despite the fact that the Wayne County Circuit Court does not have jurisdiction over this Court's December 29, 2014 Restitution Order.  Accordingly, **Defendant Davis respectfully requests that this Honorable Court holds an emergency hearing or issues an order granting the requested relief without a hearing before Monday, August 15, 2016.**

It is important to inform the Court that the Highland Park School District and its Emergency Manager filed this frivolous and baseless motion with the Wayne County Circuit Court in retaliation against Defendant Davis as a result of him recently filing a meritorious action in this Court, *Davis v Schiller*, et. al., Case No. 16-cv-12755, U.S. District Judge Stephen Murphy, which properly alleges that the Highland Park School District's Emergency Manager unlawfully expended $500,000 from the Highland Park School District's Sinking Fund to assist with the demolition of the Highland Park Community High School without first receiving the approval from the qualified and registered electors of the City of Highland Park.  See *Davis v Schiller*, Case No. 16-cv-12755.  As with most of Defendant Davis' lawsuits, Defendant Davis' recently filed civil action against the Highland

Park School District's Emergency Manager was covered extensively by the local media. **(See Articles from Detroit Free Press and Detroit News attached hereto as Exhibit C)**.

The Highland Park School District's and its Emergency Manager's pending motion before the Wayne County Circuit Court seeks to usurp the authority and jurisdiction of this Court. Moreover, as this Court is keenly aware, the Mandatory Victims Restitution Act ("**MVRA**") does not grant the Highland Park School District or its Emergency Manager with statutory standing to enforce this Court's December 29, 2014 Restitution Order (Docket No. 75). Only the United States, through the U.S. Attorney, has standing to enforce this Court's December 29, 2014 Restitution Order under the MVRA. *See* 18 U.S.C. § 3663A(d) and 18 U.S.C. § 3664(m)(1)(A)(i).

Accordingly, for the reasons stated below, Defendant Davis prays that this Honorable Court GRANT his Emergency Motion.

## II.    PROCEDURAL POSTURE OF CASE

On April 5, 2012, Defendant Davis was indicted by the United States Government on 16 counts alleging misconduct while Defendant Davis was an elected member of the Highland Park Board of Education. On June 28, 2012, a First Superseding Indictment was issued against Defendant Davis adding four new counts alleging his filing of false income tax returns. After Defendant Davis'

indictment became public, Defendant Davis remained and continued in his

employment with Michigan AFSCME Council 25 ("**AFSCME**") as a Union Staff

Representative, until September 18, 2014.[3]

     On September 2, 2014, Defendant Davis pled guilty before this Court to

theft of funds from a federally-funded program in violation of 18 U.S.C. §

666(a)(1)(A) and filing a materially false income tax return in violation of 26

U.S.C. § 7206(1).  Three months later, on December 18, 2014, Defendant Davis

was sentenced by the Court to serve 18 months at a federal minimum security

camp.[4]  On March 13, 2015, Defendant Davis self-surrendered and began serving

his 18-month sentence at FPC Montgomery.  On February 3, 2016, Defendant

Davis was released from FPC Montgomery and placed on direct home

confinement/halfway house.  On July 1, 2016, Defendant Davis completed his

prison sentence and was placed on supervised release.  On July 22, 2016,

Defendant Davis and his Probation Officer met for approx. 15 minutes with Senior

---

[3] Citing the prohibition set forth under 29 U.S.C. § 504, on September 18, 2014,
AFSCME terminated Defendant Davis from his position as a Union Staff
Representative.

[4] On December 29, 2015, the Court entered the criminal judgment (Docket No.75)
in the case recommending that Defendant Davis be placed at two preferred camps.
Graciously, the Federal Bureau of Prisons ("**BOP**") granted the Court's
recommendation and placed Defendant Davis at the federal minimum security
camp located on the Maxwell Air Force Base in Montgomery, Alabama ("**FPC
Montgomery**").  The Court's Criminal Judgment also required Defendant Davis to
pay restitution to the Highland Park School District in the amount of $197,983.
(Docket No. 75).

U.S. District Court Judge Arthur Tarnow ("**Judge Tarnow**"), in which Defendant

Davis answered questions posed to him by Judge Tarnow.

## III.   LAW AND LEGAL ANALYSIS

### A. Court Should Enter Order Approving Monthly Restitution Payments As Recommended By U.S. Probation Office In Accordance With MVRA.

Although the Court's December 29, 2014 Restitution Order (Docket No. 75)

does not explicitly state the federal statute under which restitution was ordered, it

is safe to assume, however, that this Court ordered Defendant Davis to pay

restitution to the Highland Park School District pursuant to the provisions of the

MVRA. "The MVRA, pass[ed] as part of the Antiterrorism and Effective Death

Penalty Act of 1996, amended the Victim Witness Protection Act, 18 U.S.C.

3663(a)(1)(A) ("VWPA"), and made restitution mandatory for offenses against

property under Title 18, "including any offense committed by fraud or deceit." 18

U.S.C. 3663A(c)(1)(A)(ii). The MVRA applies to convictions on or after April 24,

1996..." *U.S. v Elson*, 577 F.3d 713, 721 (6th Cir. 2009). As noted by the Sixth

Circuit *in U.S. v Davis*, 306 F.3d 398, 425-426 (6th Cir. 2002), "the MVRA

expressly states that "the court shall ... specify in the restitution order the manner in

which, and the schedule according to which, the restitution is to be paid," and in

doing so shall consider the factors delineated in the provision. 18 U.S.C. §

3664(f)(B)(2) (2000)."

In the case at bar, the Court's December 29, 2014 Restitution explicitly states: "The defendant shall make monthly payments on any remaining balance of the: restitution, special assessment **at a rate and schedule recommended by the Probation Department and approved by the Court**." (Docket No. 75) (Emphasis supplied). As noted, Defendant Davis was placed on supervised release effective July 1, 2016. In accordance with the Court's December 29, 2014 Restitution Order, Defendant Davis' Probation Officer recently informed him in writing the amount she was recommending to the Court for him to be responsible for paying on a monthly basis to satisfy the Court's December 29, 2014 Restitution Order. Defendant Davis' Probation Officer's recommendation was based upon Defendant Davis' unemployment status, ability to pay, and lack of financial assets. Defendant Davis' Probation Officer properly determined an appropriate monthly repayment amount based upon Defendant Davis' inability to pay. The Probation Officer's recommendation was appropriate considering the Sixth Circuit has determined that "A district court therefore may 'consider ability to pay *only* when establishing the schedule of payment.'" *U.S. v Bogart*, 576 F.3d 565, 573 (6th Cir. 2009) (quoting *United States v. Ellis*, 522 F.3d 737, 739 (7th Cir.2008)) (emphasis in original).

The Highland Park School District's and its Emergency Manager's pending motion before the Wayne County Circuit directly contravenes the Probation

Officer's recommendation and this Court's December 29, 2016 Restitution Order

(Docket No. 75). The Sixth Circuit has ruled that a sentencing Court must set a

payment schedule for restitution. See *United States v Davis*, 306 F.3d 398, 426 (6th

Cir. 2002); see also *Sturgeon v Terris*, Case No. 13-cv-12512 (E.D. Mich. 2014).

In fact, the Sixth Circuit has approved the practice of the district court "eliciting

the assistance of others in setting such a schedule." *United States v Davis*, 306

F.3d at 426. Moreover, as the Sixth Circuit explained in *U.S. v Bogart*, 576 F.3d

565 (6th Cir. 2009):

> Although a court cannot take into account the financial circumstances
> of a defendant in determining *whether* to award restitution, the statute
> provides that district courts must evaluate a defendant's ability to pay when
> establishing the manner and schedule of restitution payments. *See* 18 U.S.C.
> § 3664(f)(2). Specifically, the MVRA directs district courts to consider "the
> financial resources and other assets of the defendant, including whether any
> of these assets are jointly controlled;" *id.* § 3664(f)(2)(A), "projected
> earnings and other income of the defendant; and" *id.* § 3664(f)(2)(B), "any
> financial obligations of the defendant; including obligations to any
> dependents," *id.* § 3664(f)(2)(C). In addition, the statute sets forth numerous
> possible methods of payment, including a lump-sum payment, installments,
> periodic nominal amounts, or a combination of methods. *See id.* §
> 3663(f)(3).

*U.S. v Bogart*, 576 F.3d at 574.

Therefore, it is appropriate and necessary for this Honorable Court to now

enter an order approving the monthly restitution repayment amount for the

Defendant Davis as recommended by the U.S. Probation Office in accordance with the MVRA. *Id.*

**B. The Highland Park School District nor its Emergency Manager Has Standing To Enforce This Court's December 29, 2014 Restitution Order In State or Federal Court.**

The MVRA is clear as to which parties have the authority and statutory standing to enforce this Court's restitution order. 18 U.S.C. § 3663A(d) of the MVRA states: "(d) An order of restitution under this section shall be issued and enforced in accordance with section 3664." 18 U.S.C. § 3664(f)(B) of the MVRA provides in relevant part:

> (2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
>
> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
>
> (B) projected earnings and other income of the defendant; and
>
> (C) any financial obligations of the defendant, including obligations to dependents.

18 U.S.C. § 3664(m)(1)(A) of the MVRA further provides in pertinent part:

> (m)(1)(A)(i) **An order of restitution may be enforced by the United States** in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or (ii) by all other available and reasonable means. (Emphasis supplied).

The United States Supreme Court has established rules of statutory interpretation/construction, which this Court is bound to follow. "Where, as here,

resolution of a question of federal law turns on a statute and the intention of Congress, *we look first* to the statutory language *and then to* the legislative history *if the statutory language is unclear*." *Blum v Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed. 2d 891 (1984) (Emphasis supplied). "The starting point in interpreting a statute is its language[.]" *Good Samaritan Hosp. v Shalala,* 508 U.S. 402, 409, 113 S. Ct. 2151, 124 L.Ed.2d 368 (1983). "'[W]hen the statutory language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.'" *United States v. Washington,* 584 F.3d 693, 695 (6th Cir.2009) (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,* 548 U.S. 291, 296, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006)). "[The court's] inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).

In the present case, the language of the MVRA is clear and unambiguous. The "sole function of the courts is to enforce [the statute] according to its terms." *Caminetti v United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917). "If the words are plain, they give meaning to the act, [then] it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Id.* at 490, 37 S. Ct. 192. "[The Court's] inquiry must cease of the

statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson v Shell Oil, Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (internal citations and quotation marks omitted). "Recognizing the consequences of unbridled judicial forays into the legislative sphere, the Supreme Court has admonished 'time and again that a legislature says in a statute what it means and means in a statue what it says there.'" *Thompson v North American Stainless, LP*, 567 F.3d 804, 807 (6th Cir. 2009) (quoting *Arlington Cent. Sch. Dist. Bd. Of Ed v Murphy*, 548 U.S. 296, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006)). "Thus, any interpretation of the MVRA that makes one if its provisions irrelevant is presumptively incorrect." *U.S. v Perry*, 360 F.3d 519, 537 (6th Cir. 2004).

Thus, from the clear and unambiguous language of the MVRA, the only party that has standing to enforce this Court's December 29, 2014 Restitution Order (Docket No. 75) is the United States **and not** the Highland Park School District and its Emergency Manager.  Based upon the Highland Park School District's and its Emergency Manager's retaliatory actions, it has become necessary for this Honorable Court to enter an order declaring that the Highland Park School District nor its Emergency Manager has the statutory standing to enforce this Court's December 29, 2014 Restitution Order (Docket No. 75) in either federal or state court, except as expressly authorized under the MVRA.

Additionally, the Wayne County Circuit Court nor any other state court has jurisdiction to amend or alter this Court's December 29, 2014 Restitution Order (Docket No. 75). It is well-settled in the Sixth Circuit that "restitution is part of one's sentence." *U.S. v Winans*, 748 F.3d 268, 271 (6th Cir. 2014) (internal citations and quotation marks omitted). And it is undisputed that "[t]he district court possessed subject matter jurisdiction over this federal criminal prosecution pursuant to 18 U.S.C. § 3231." *U.S. v Kaminski*, 501 F.3d 655, 665 (6th Cir. 2007). Therefore, it would be illogical for the Wayne County Circuit Court or any other state court to be able to exercise jurisdiction and enforce this Court's December 29, 2014 Restitution Order (Docket No. 75).

If this Court does not take swift and immediate action as the Defendant Davis has requested herein, Defendant Davis will continue to be subjected to frivolous motions filed by the Highland Park School District's Emergency Manager in effort to further harass and retaliate against the Defendant Davis for properly exercising his First Amendment Constitutional Rights. Moreover, and perhaps more importantly, much confusion will result if the Highland Park School District's Emergency Manager is permitted to continue to file frivolous motions with the Wayne County Circuit Court because orders may be entered, which conflict with this Court's December 29,2014 Restitution Order (Docket No.75) and Defendant Davis' terms of supervised release.

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, Defendant Davis prays that this Honorable Court GRANT his Emergency Motion, and (1) enter an order approving the monthly restitution repayment amount/plan as recommended by the Defendant Davis' Probation Officer; (2) enter an order declaring that the Highland Park School District nor its Emergency Manager has standing to enforce this Court's December 29, 2014 Restitution Order in federal or state court, except as expressly permitted and authorized under the MVRA; (3) enjoin the Highland Park School District and its Emergency Manager from instituting such proceedings; and (4) grant any other relief the Court deems just and appropriate.


Dated:  August 9, 2016                         Respectfully submitted,

                                               /s/ ROBERT DAVIS

                                               ROBERT DAVIS, *Pro Se* Defendant
                                               180 Eason
                                               Highland Park, MI 48203
                                               (313) 523-7118
                                               Email: Davisrobert854@gmail.com

## CERTIFICATE OF SERVICE

I, ROBERT DAVIS, certify that the foregoing document(s) was filed and served via the Court's electronic case filing and noticing system (ECF) this 9th day of August, 2016, which will automatically send notification of such filing to all attorneys and parties of record registered electronically.  Additionally, I further certify that on this 9th day of August, 2016, I personally served the foregoing document(s) on the following parties:

SHELDON LIGHT
Assistant U.S. Attorney
211 West Fort
Detroit, MI 48226

Respectfully Submitted,

Robert Davis, Pro Se Defendant

# EXHIBIT A

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

ROBERT DAVIS,
In his official capacity as the duly elected secretary
of the Highland Park Board of Education,

        Plaintiff,

HIGHLAND PARK BOARD OF EDUCATION and
STEVE SCHILLER, in his official capacity as the
Appointed Emergency Financial Manager for the
Highland Park School District

        Defendants.

Case No. 12-013301-AW
Hon. Kathleen MacDonald

12-013301-AW
FILED IN MY OFFICE
WAYNE COUNTY CLERK
8/5/2016 3:17:28 PM
CATHY M. GARRETT

| ANDREW A. PATERSON, JR. (P18690) | DENNIS R. POLLARD (P18981) |
|---|---|
| PATERSON LAW OFFICE | MARK S. ROBERTS (P44382) |
| Attorney for Plaintiff | SECREST WARDLE |
| 46350 Grand River Avenue, Suite C | Attorneys for Defendants |
| Novi, MI 48374 | 2600 Troy Center Drive |
| (248) 568-9712 | P.O. Box 5025 |
| | Troy, MI 48007-5025 |
| | (248) 851-9500 |

**DEFENDANTS' RENEWED MOTION FOR A POST-JUDGMENT CREDITOR'S
EXAMINATION OF PLAINTIFF DAVIS BEFORE THE COURT**

NOW COMES Defendant's Emergency Manager, Steven Schiller, by and through his

attorneys, **Secrest Wardle**, and requests this Honorable Court to require Plaintiff Robert Davis to

provide documents identified in this motion and the proposed Order to Defendant's undersigned

Emergency Manager's by September 30, 2016 and to thereafter permit Defendant Emergency

Manager's undersigned counsel, subject to scheduling with this Court's office, the opportunity to

conduct a creditor's examination of Plaintiff Robert Davis pursuant to MCR 2.621 to A.)satisfy

the Judgment entered by this Court against him on April 19, 2013 presently outstanding in the

amount of $39,696.91 and in favor of the School District of the City of Highland Park and its Emergency Manager, presently Steven Schiller, and B.) satisfy the Judgement for restitution entered by U.S. District Court Judge Arthur J. Tarnow on December 29, 2015 for $197,938 against Mr. Davis and in favor of Defendant Emergency Manager, presently Steven Schiller, acting for on behalf of the School District of the City of Highland Park, acting pursuant to 2012 PA 436, referenced below.

While the matters related below pertaining to the present suit were occurring Mr. Davis was indicted in Federal District Court in 2012 for wrongfully converting several Millions of dollars from the Highland Park School District all while serving as a Board of Education Trustee and Board Officer and, separately, failing to report his ill-gotten income from the conversion on his Federal income tax return. On September 2, 2014 Mr. Davis pleaded guilty to the wrongful conversion of approximately $1.9 Million from the School District and failing to report said converted funds on his income tax return. U.S. District Court Judge, Arthur J. Tarnow, accepted Mr. Davis' plea on December 18, 2014 and as accepted on December 18, 2014 and adjudicated in the form of Judgment entered on in an order entered on December 29, 2014 sentencing Mr. Davis to 18 months of incarceration in a Federal Prison and, *inter alia*, entered as a "Criminal Monetary Penalty" a Judgment of restitution payable to Highland Park School District in the amount of $197,983 attributable to Mr. Davis' wrongful conversion of the School District's monies, (*see* **Exhibit E**). No attempt has been made by Mr. Davis to pay that Judgment.

The present creditor's examinations is sought to discover the locations and amounts of Mr. Davis' assets in satisfaction of both the Judgment of April 19, 2013 entered by this Court and the December 29, 2015 Judgment entered by U. S. District Court Judge Tarnow. Defendant Emergency Manager alleges as follows:

2

1.  By way of brief history, this Court previously granted an order permitting a creditor's examination to occur before the Court on October 20, 2014 (*see* **Exhibit A**). That Order was substantially the same as the presently proposed Order. That Order was subsequently voided by operation of Plaintiff Davis filing a petition for bankruptcy in the U.S. Bankruptcy Court as formally recognized in an Order issued by Bankruptcy Judge Walter Shapiro entered on February 13, 2015 (*see* **Exhibit B**). However, upon later considering cross motions for summary judgment relating to the issue of whether the debt represented by this Judgment was dischargeable given that it arose out of this Court's finding of the frivolous nature of the proceedings brought by Mr. Davis, within the meaning of MCL§ 600.2591(3)(a)(iii), the Judgment was determined by Judge Shapiro *not* to be discharged as a result of the bankruptcy petition. [Not incidentally, the Judgment entered by this Court was later affirmed by the Michigan Court of Appeals and leave to appeal to the Michigan Supreme Court was later denied. The Court of Appeals moreover found Mr. Davis' appeal to that Court to be vexatious within the meaning of MCR 7.216(C) warranting further sanctions.]

2.  Accordingly, Judge Shapiro issued an opinion on September 8, 2015, (*see* **Exhibit C**) dismissing Plaintiff Davis' contention raised in his motion that the debt represented by the present Judgment was dischargeable and held, conversely, granting the Emergency Manager's cross motion, that this debt is not dischargeable in bankruptcy for the reasons stated in the Opinion. That Opinion serves to permit the present collection proceedings to resume. Defendant Davis

3

was incarcerated in Federal prison at that time and was only released from incarceration on July 1, 2016. As a result, the present motion to resume the creditor's exam was delayed while awaiting Mr. Davis release from incarceration,

3. Plaintiff's complaint in the present suit was dismissed with prejudice on December 14, 2012 and the Court awarded Defendant Emergency Manager and took under advisement the Highland Park Board of Education request for sanctions for Plaintiff Davis having filed a frivolous suit, within the meaning of MCL §600.2591(3)(a)(iii),

4. A judgment for such frivolous suit was entered by this Court on April 19, 2013, following an evidentiary hearing on January 18, 2013 for a total judgment amount as of that time of $40,356.60. (*See* **Exhibit D**).

5. Plaintiff was served via First Class Mail on April 19, 2013 with a copy of the Judgment entered by this Court.

6. Since the judgment was entered, Plaintiff has received only partial recovery applied toward satisfaction of this judgment through a) forfeiture of Mr. Davis' $1,000.00 cash bond placed with the Court Clerk by Mr. Davis as ordered by this Court to secure Defendants for costs and b) periodic garnishments of a portion of Mr. Davis' wages. With accumulated interest on the Judgment less partial recovery based on forfeiture of the $1,000 cash bond, garnishments of Plaintiff Davis' wages and a garnishment of Judgment Debtor's bank account for $23.31, the amount presently due in order to satisfy the Defendant Emergency Manager's Judgment is $39,696.91. Plaintiff Davis has not made

4

any contact with undersigned counsel for Defendant Emergency Manager to work out an arrangement in satisfaction of the remaining balance of the judgment due and owing.

7.   Defendant Schiller believes that Plaintiff has assets which are subject to being executed upon, liquidated and paid to Defendant Emergency Manager to satisfy the April 19, 2013 Judgment.

8.   Defendant Emergency Manager requests an order to compel Plaintiff Davis to provide the documents itemized in paragraph 9 below to undersigned counsel for Defendant by September 30, 2016 and to thereafter appear before this Court for a creditor's examination to be later scheduled with this Court, so that Plaintiff Davis' assets can be located in order to satisfy the outstanding balance on the April 19, 2013 Judgment. There is presently $39,696.91 outstanding from Plaintiff Davis due to Defendant Emergency Manager on the Judgment. This amount is subject to being increased for additional attorney fees and costs following an evidentiary hearing before this Court, as directed by the Court of Appeals, based on that Court's determination that Plaintiff Davis' appeal was vexatious within the meaning of 7.216(C).

9.   Defendant Emergency Manager requests the Court to order Robert Davis to produce the following documents by September 30, 2016 to undersigned counsel for inspection in advance of conducting the creditor's examination:

## DOCUMENTS TO BE PRODUCED

1) An itemized list of all amounts of money that Mr. Davis has in cash and/or in a checking or savings account setting forth the amount of such money, the date(s) when the money was received, the source of same listed by name of the source, the current balance of the money and location of same,

2) An itemized list of all real and personal property possessed by Mr. Davis, including the nature of the property and the present location of each such item,

3) An itemized list of all items of real and personal property possessed by Mr. Davis or otherwise held or maintained for Mr. Davis' benefit or use, future or present, including property being held in someone else's name, the name and address of the person or entity holding such property, an itemized list setting forth a description of the property being so held, its location and the identifying names or numbers which describe or relate to each such item of property,

4) An itemized list of all banks or financial institutions listed by name and address of such bank or financial institution and account numbers for each such institution where Mr. Davis has money on account in his name or where the money on account is otherwise available for Mr. Davis' use and benefit regardless of whose name such account is maintained at the depository bank or financial institution,

5) An itemized list of the respective balances on account for each of the above banks or financial institutions listed in 4) above, the amount of monies maintained in the bank or financial institution and the monthly account statements for said accounts rendered over the last 10 years through the most recent monthly period,

6) If the monies referenced above is maintained in the name of some person or entity other than Mr. Davis but which funds are available for his use, the name of the person or entity maintaining the monies and the location where the funds are located, a list of all banks and financial institution where such monies are maintained, the respective account numbers for each such bank and financial institution, the amount of monies maintained in such accounts, and copies of monthly account statements rendered by the bank or financial institution maintaining the monies over the last 10 years current through the most recent monthly period,

7) Relative to any monies derived from the School District of the City of Highland Park (School District) that was the subject of the criminal proceeding resulting in Mr. Davis' recent felony conviction as adjudicated on December 29, 2015, list all monies that Mr. Davis acknowledged on the record before Judge Arthur J Tarnow to have unlawfully converted from the Highland Park School District during entry of his plea on the record on September 2, 2014, and state how much money Mr. Davis actually received using the scheme that was the subject of Mr. Davis' guilty plea on that date, including any monies received by him by being diverted through the straw entities in excess of the $197,983.00 to which he pled,

6

8) With regard to the amount Mr. Davis received using Companies, identified as Zenoco and DHI Consulting, which falsely invoiced the School District for services and, following receipt of payment by those Companies for those services from the School District, forwarded monies to a nonprofit entity created and controlled by Mr. Davis known as Citizens United to Save Highland Park Schools and which Mr. Davis later converted those moneys to his own personal use and benefit, list the total amount that Mr. Davis so converted from the School District using the entities above identified for his own personal benefit and list how the money received by Mr. Davis in this manner was maintained at the time it was taken and where or in what bank(s) and/or financial entity or entities Mr. Davis maintained those monies through the time when your answer is provided to Defendants,

9) When Mr. Davis entered his guilty plea to the wrongful conversion of the School District's monies Mr. Davis also entered a plea to having failed to declare the monies that he wrongfully converted from the School District as income on his personal Federal income tax return filed with the Internal Revenue Service. In connection with the plea entered before Judge Tarnow on September 2, 2014 Mr. Davis testified that along with filing an amended tax return or returns with the Internal Revenue Service he paid his income tax deficiency, including interest and penalties, based on his amended tax return(s) to the Internal Revenue Service. Set forth the amount of money Mr. Davis paid for those tax deficiencies, interest and penalties, identify the source of monies he used to make that payment setting forth the bank, financial entity or other source (including cash on hand) from which he paid that tax deficiency, interest and penalty, a statement or other document setting forth the specific account number(s) which was or were used to make that payment and identify the specific amount of money that remained in that account(s) after Mr. Davis paid the income tax deficiency, including interest and penalty, from it and, finally, set forth what is the current balance of money in that account. Attach the periodic monthly statements for that account(s) for the period beginning in January 1, 2005 through the current month when Mr. Davis' answer is provided to Defendant Emergency Manager's counsel in response to the Court's order,

10) Provide copies of all bank statements of accounts held by Mr. Davis and the nonprofit entities know as Citizens United to Save Highland Park Schools and Citizens United Against Corrupt Government from January 1, 2005 to the present,

11) Provide an itemized statement identifying title to all property, real and personal, whether jointly or singularly owned, of Mr. Davis and the records of transfers to all third parties of any and all real and personal property of Mr. Davis, whether jointly or singularly owned since, January 1, 2005 through the present,

12) Provide copies of documents relating to an investment portfolio, including any investment accounts, whether vested or not vested, of Robert Davis, whether jointly or singularly owned, January 1, 2005 through the present,

7

**13)** Provide copies of documents relating to stocks, mutual funds and/or bond holdings of Mr. Davis, whether jointly or singularly owned since January 1, 2005 through the present,

**14)** Provide copies of tax returns filed Mr. Davis, whether filed individually or jointly, from January 1, 2005 through the present,

**15)** Provide copies of all payroll check stubs of Robert Davis received from January 1, 2005 through the present.

**16)** Provide copies of all documentary evidence of any income of Robert Davis received since January 1, 2005 through the present.

<div style="margin-left: 40%;">

Respectfully submitted,
SECREST WARDLE

By:/s/ Dennis R. Pollard_____
DENNIS R. POLLARD (P18981)
Attorney for Appellee,
Emergency Financial Manager for Highland Park
School District Steve Schiller and Highland Park
School District Board of Education
2600 Troy Center Drive
P.O. Box 5025
Troy, MI 48007-5025
(248) 851-9500

</div>

Dated: August 5, 2016

8

# EXHIBIT B

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

ROBERT DAVIS,
In his official capacity as the duly elected secretary
of the Highland Park Board of Education,

     Plaintiff,

v                                      Case No. 12-013301-AW

HIGHLAND PARK BOARD OF EDUCATION and    Hon. Kathleen MacDonald
Donald Weatherspoon, in his official capacity as the appointed
Emergency Financial Manager for the Highland Park
School District under Public Act 436 of 2012,

     Defendants.

12-013301-AW
FILED IN MY OFFICE
WAYNE COUNTY CLERK
8/5/2016 3:17:28 PM
CATHY M. GARRETT

| | |
|---|---|
| ANDREW A. PATERSON JR. (P18690) | DENNIS R. POLLARD (P18981) |
| Attorney for Plaintiff | MARK S. ROBERTS (P44382) |
| 46350 Grand River Avenue, Suite C | Attorneys for Defendants |
| Novi, MI 48374 | 2600 Troy Center Drive |
| (248) 568-9712 | P.O. Box 5025 |
| | Troy, MI 48007-5025 |
| | (248) 851-9500 |

## NOTICE OF HEARING

TO:   ANDREW A. PATERSON (P 18690)
       ATTORNEYS FOR PLAINTIFF

     Please take notice that Defendant's Renewed Motion for a Post-Judgment Creditor's Examination of Plaintiff Davis Before the Court, will be brought for a hearing before the Honorable Kathleen MacDonald, Circuit Court Judge for the 3rd Judicial Circuit on Friday, August 19, 2016 at 9:00 a.m.

                      Respectfully Submitted:
                      **SECREST WARDLE**

                      BY: /s/ Dennis R. Pollard
                           DENNIS R. POLLARD (P18981)
                           Attorney for Defendants
                           2600 Troy Center Drive
                           P.O. Box 5025
                           Troy, MI 48007-5025
Dated:  August 5, 2016            (248) 851-9500

3680348v1

# EXHIBIT C

# Lawsuit questions use of millage revenue for Highland Park High demolition

**Lori Higgins**, Detroit Free Press   *6:12 p.m. EDT July 27, 2016*



*(Photo: Detroit Free Press file photo)*

A federal lawsuit filed this week alleges the Highland Park School District is improperly using revenue raised from a sinking fund millage to pay for the demolition of the city's shuttered high school.

The lawsuit was filed by Robert Davis, a former school board member in Highland Park who was convicted in 2014 for embezzling $200,000 from the cash-strapped school district (/story/news/local/michigan/wayne/2014/12/18/robert-davis-highland-park-tax-fraud-embezzlement/20577839/), which has been overseen by a state-appointed emergency manager since 2012. It is the latest challenge to elected officials by Davis, a political activist who frequently challenges school and municipal leaders.

Most recently, a federal judge gave him the OK to move forward with recall efforts against Gov. Rick Snyder and Detroit Mayor Mike Duggan (/story/news/local/michigan/2016/03/31/recall-petitions-against-duggan-snyder-proceed/82480648/).

Davis, who served 10 months in prison and owes $197,000 in restitution, said Tuesday afternoon that the revenue — about $400,000 — "can't be used" for the demolition because the property is not owned by the school district.

State law allows school districts to levy up to five mills for a sinking fund — a voter-approved millage that generates revenue that can only be used for "the purchase of real estate for sites for, and the construction or repair of, school buildings."

The district closed the high school two years ago. The building sits on property owned by the city of Highland Park.

► **Related:** Labor activist sues EAA over chancellor search (/story/news/local/michigan/detroit/2014/10/03/robert-davis-sues-eaa/16663897/)

"It is evident that the demolition of the Highland Park Community High School does not fall within the listed purposes for which funds from a sinking fund can be used for," Davis said in his lawsuit. "Demolishing a school building on land owned by the local municipality, is not among the approved purposes, especially considering the demolition ... is not for a school-related project."

The law itself doesn't spell out specific uses for the revenue. In years past, the Michigan Department of Treasury has provided guidance to districts on what is and isn't allowed. For instance, in 2002, the business manager for Westwood Community Schools in Wayne County sent a letter to Treasury asking whether demolition of a building located on a site to be acquired with sinking funds is a permissible use of sinking fund millage.

Treasury responded that demolition does indeed meet the requirements.

► **Related:** Davis can sue Detroit council over Orr tenure deal (/story/news/local/michigan/detroit/2014/09/29/robert-davis-detroit-city-council-kevyn-orr/16437997/)

Bill DiSessa, spokesman for the Michigan Department of Education, said demolition is allowed, but the fact that the Highland Park property "isn't on district property and not going to be used by the district," could be a concern.

DiSessa referred questions to the Treasury department.

Treasury officials did not respond to several requests for comment.

Neither did Steve Schiller, the emergency manager for the district, who is named in the lawsuit.

► **Related:** Snyder recall petition over Flint water is approved by panel (/story/news/local/michigan/flint-water-crisis/2016/02/22/snyder-recall-petition-over-flint-water-approved-panel/80761072/)

Also named in the suit: Steve Arwood, the director of the Michigan Department of Talent and Economic Development. The lawsuit states that Arwood submitted an application to the Michigan State Housing Development Authority seeking a grant of $2 million to demolish the high school. The grant application says the district would kick in $400,000 from its sinking fund revenue.

8:15-cv-20225-AC-EAS Doc #39-85 Filed 09/09/16 Pg 28 of 30    Pg ID 625

Meanwhile, Davis raises concerns in his suit about a lack of audits of the district's sinking fund revenue. State law says districts that have sinking funds must have those funds audited annually. But when Davis requested — through the Michigan Freedom of Information Act — the audits for the 2012-13, 2013-14 and 2014-15 school years, he received a denial notice that said "sinking fund audits for the years requested were not prepared and thus do not exist."

*Contact Lori Higgins: 313-222-6651, lhiggins@freepress.com or @LoriAHiggins*

Read or Share this story: http://on freep.com/2anseCx


## Printable Coupons

     



2:12-cv-20224-AJB-PJK Doc # 89 Filed 08/09/16 Pg 29 of 30 Pg ID 626

# Suit targets use of $400K to raze Highland Park HS



Nicquel Terry, The Detroit News    10:31 a.m. EDT July 27, 2016

*Highland Park* — A former Highland Park school board member is suing the district's emergency manager and another state official for transferring $400,000 out of a sinking fund to help pay for the demolition of the former Highland Park Community High School.

Robert Davis, who served 10 months in prison for stealing $200,000 from the district, filed the lawsuit Tuesday in federal court.

*(Photo: Detroit News file photo)*

The lawsuit alleges Emergency Manager Steven Schiller and Steve Arwood, director of the Department of Talent Economic Development, unlawfully used sinking fund money for the demolition project without the consent of voters.

Davis, identified as a pro se plaintiff, also accuses Schiller of violating due process by not having the district's sinking fund audited in the 2012-13, 2013-14, and 2014-15 fiscal years.

A sinking fund is a limited property tax used to pay for major repairs, construction and renovations of school buildings.

"That money should have been used over the last few years that an emergency manager has been in place to repair the existing school buildings," Davis said. "And it wasn't done."

Arwood declined to comment on the lawsuit.





Highland Park Community High School closed in 2015. *(Photo: Todd McInturf / The Detroit News)*

"It would be inappropriate for us to comment on potential litigation," said Dave Murray, a spokesman for the Michigan Talent and Economic Development Department.

Murray said the department runs the Michigan Land Bank Fast Track Authority, which often works with the Michigan State Housing Development Authority on grant projects that remove blighted buildings from neighborhoods.

The Highland Park School District contacted the land bank for help with the demolition project, Murray said.

Schiller was unable to be reached for comment.

The district has been faced with a host of financial hardships as well as a state takeover in the past decade.

Schiller, Highland Park's fifth emergency manager since 2012, has said the district will cut its ties with George Washington Carver Academy this year, leaving just one school in the district — Highland Park Renaissance Academy, which is operated by the Leona Group.

Davis' lawsuit states that Schiller authorized the use of the sinking fund for demolition of the high school.

It also says Arwood submitted an application to the Michigan State Housing Development Authority seeking a $2 million grant to raze Highland Park Community High School. The grant application indicates that a $400,000 contribution from the district's sinking fund would be required, according to the office.

The lawsuit alleges that the demolition is unlawful because the building will not be replaced with a school-related structure.

Davis accused the city of planning to develop the land for commercial use.

"It is evident that the demolition of the Highland Park Community High School does not fall within the listed purposes for which funds from a sinking fund can be used for," the lawsuit states.

The lawsuit seeks to require the school district to conduct an audit of the sinking fund and allow voters to decide whether the fund can be used to demolish the high school.

"That money should be sent right back to the bank until the citizens weigh in on the use of the funds," Davis said.

nterry@detroitnews.com

(313) 222-6793

@NicquelTerry


Read or Share this story: http://detne.ws/2amm5Xp